# IN THE UNITED STATES DISTRICT COURT
# THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| LEE ANN LINDSEY,  )  <br>    Plaintiff,  )  <br> )  <br>v.  )  <br> )  <br> )  <br>HARDEE'S FOOD SYSTEMS, INC.,  )  <br>    Defendant  )  | CASE NO.:  **CV-12-BE-3542-S** |

## MEMORANDUM OPINION

This employment discrimination matter is before the court on "Defendant's Motion to Dismiss Plaintiff's Complaint." (Doc. 5).  For the reasons stated in this Memorandum Opinion, the court finds that the motion is due to be DENIED.

### Standard of Review

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)).  A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47).   It does, however, "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Pleadings that contain nothing more than "a formulaic recitation of the elements of

a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained in *Twombly* that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1948 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570). To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Supreme Court has recently identified in *Iqbal* "two working principles" for the district court to use in applying *Twombly's* facial plausibility standard. The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of *well-pleaded factual allegations*; however, the court does have to not have to accept as true legal conclusions even when "couched as [] factual allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. C. at 1949-50. The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1150. Thus, under prong one, the court determines the factual allegations that are well-pleaded and assumes their veracity, and then proceeds, under prong two, to the task of

determining the claim's plausibility given the well-pleaded facts.  That task is "context-specific" and must permit the court, based on its "judicial experience and common sense. . . to infer more than the mere possibility of misconduct." *Id.*  If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed.  *Id.*

### Lindsey's Complaint

In the instant case, the Plaintiff, Lee Ann Lindsey, filed a Complaint with four counts: Count I -  asserting race discrimination brought pursuant to Title VII and Section 1981; more specifically, she claims that Hardee's established a hostile work environment based on race and terminated her based on race; Count II - asserting sex discrimination brought pursuant to Title VII, claiming that Hardee's did not terminate similarly situated males; Count III - asserting that she was terminated in violation of the Family Medical Leave Act (FMLA); and Count IV - asserting that she was terminated because of her mental disability in violation of the Americans with Disabilities Act (ADA) as amended.

Hardee's argues that none of Lindsey's claims sufficiently "state[s] a claim to relief that is plausible on its face," and thus, all fail to meet the standard the Supreme Court set out in its *Twombly* decision.  *See Twombly*, 550 U.S. at 555.  The court will address each claim separately.

I. Count I

In this count, Lindsey asserts that Hardee's created a hostile work environment based on race and also terminated her based on race.

A.  Hostile Work Environment

Lindsey first asserts that Hardee's created a hostile work environment based on race.  To state a *prima facie* claim for a racially hostile work environment, she must establish the

3

following elements: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based on a protected characteristic; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment; and (5) that a basis exists for holding Hardee's liable. *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 582 (11 th Cir. 2000) (citing *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1245 (11 th Cir. 1999) (en banc), *cert. denied,* 531 U.S. 1076 (2001)).  However, "A Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas* prima face case. . .[;] it must provide 'enough factual matter (taken as true) to suggest' intentional race discrimination." *Davis v. Coca-Cola Bottling Co. Consol.,* 516 F.3d 955, 974 (11th Cir. 2008).

In her Complaint, Lindsey, a white female, alleges that she worked for Hardee's for three years and that she progressed in her job and was promoted to shift leader and, ultimately, to store manager, but that her supervisor's attitude toward her changed upon discovering that Lindsey has a biracial daughter.  According to the facts alleged, Lindsey stopped by Hardee's on her day off with her biracial daughter, and the supervisor stared at Lindsey's daughter, frowned, stated to Lindsey in a rude tone of voice, "Well, you are finished, and you can leave."  (Compl., doc. 1, ¶¶ 15-18). She further alleges that after that encounter, Lindsey's supervisor questioned others about Lindsey's child and whether Lindsey lived with a black man, criticized Lindsey's work and the store she managed without justification, and "rode" her every day, causing Lindsey to be "on the verge of having a mental break down." (Doc. 1, ¶¶ 20-22) at 4-5).  Lindsey sought medical help for the stress and anxiety that she experienced because of her treatment at work, and received a doctor's excuse from work, which Lindsey faxed to her supervisor and a copy of which Lindsey left with another employee to give to the supervisor.  Hardee's terminated her on December 8,

4

2012, approximately two weeks after Lindsey's supervisor discovered that Lindsey had a biracial child.

The court finds that Lindsey has sufficiently alleged facts that, if proven, would show intentional race discrimination. She has alleged facts indicating that the supervisor's treatment was based on a prejudice against Lindsey either for having a biracial child, or for being involved in an interracial relationship as evidenced by the biracial child. Given these facts, she has sufficiently alleged facts supporting discrimination based on race that is protected by Title VII. *See Parr v. Woodmen of the World Life Ins. Co.,* 791 F.2d 888, 892 (11th Cir. 1986) (stating that "[w]here a plaintiff claims discrimination based upon an interracial marriage or association, he alleges, by definition, that he has ben discriminated against because of *his* race," and finding that Title VII protects against such discrimination); *Tomczyk v. Jocks & Jills Restaurants, LLC,* 198 F. App'x 804, 809 (11th Cir. 2006) (acknowledging that Title VII protects persons in an interracial relationship). Contrary to Hardee's argument, Lindsey states facts that sufficiently connect her treatment to the supervisor's discovery of her biracial daughter: the supervisor's overt reaction to the discovery; the rude statement immediately after discovery; the questions to others about Lindsey's personal life after discovery; the change in attitude toward Lindsey's work; and the short, two-week interval between the discovery and Lindsey's termination. Further, the facts alleged about Lindsey's seeking of medical help to deal with the stress at work and obtaining a doctor's excuse from work based on her mental state could, if proven, would tend to establish the severe and pervasive nature of the harassment, so she has sufficiently alleged element four of her *prima facie* case. Therefore, Hardee's motion to dismiss is due to be DENIED as to the claim for racially hostile work environment.

Hardee's questions whether the work environment rises to the requisite level of severe and pervasive and cites several cases that dealt with this issue at the *summary judgment* level. During the discovery process, Lindsey may not be able to provide evidence establishing that the harassment she experienced meets the level required to survive summary judgment, but that is a decision for another stage of this case.

### B.  Termination based on race discrimination

In Count I, Lindsey claims that she was not only harassed but also terminated based on race; she further alleges that she was terminated "because the defendant disapproved of the plaintiff having a biracial daughter, and the plaintiff, a white female, living with a black man." (Doc. 1, at 8).  Hardee's does not address this claim in its brief, assuming that the only claim in Count I is the hostile work environment claim.  In her opposition brief, however, Lindsey refers to her claim as one for race discrimination, and focuses not only on harassment but also on the firing "because of her association with her black child and boyfriend." (Doc. 9, at 8).  In the reply brief, Hardee's again fails to address this claim as separate from a hostile work environment claim.

Based on the same facts discussed above, the court FINDS that Lindsey has provided on this claim "'enough factual matter (taken as true) to suggest' intention discrimination." *Davis,* 516 F.3d at 974 (quoting *Twombly*, 550 U.S. at 556).

### II.  Termination based on Sex Discrimination

Count II asserts a claim for sex discrimination.  More specifically, Lindsey asserts that she was fired for her conduct of taking time off from work for illness even though she made sure

her store was properly staffed whereas Hardee's did not fire male general managers who engaged in the same or similar conduct.

Hardee's challenges the allegations of Count II as deficient, claiming that they are "vague and unsupported assertions." (Doc. 6). The court disagrees. Hardee's misunderstands Lindsey's pleading burden. For example, Hardee's complaints that she does not specify all the particulars of each communication to co-workers and her supervisor about time off and excuses for time off sound more like the requirements for pleading fraud with particularity than pleading discrimination under Title VII. Lindsey's Complaint includes specific facts that she took time off with a doctor's excuse covering the time off, specifying the days that she was off work, the dates of the doctor's appointments, the period the doctor's excuse covered, and the nature of her illness; that she communicated that information both to her co-worker and her supervisor, specifying the means of communication and identifying the persons to whom she communicated; that she made sure her store was properly staffed during her absence; that Hardee's gave "[m]ale general managers authority to take off work, for illness or other personal reasons, as long as they made sure that their store was properly staffed"; that "[m]ale managers were allowed three days of 'no call, no show' before being fired, and were allowed to be off from work if they had a doctor's excuse"; but that Hardee's fired her for job abandonment on December 8, 2010 after Lindsey presented a doctor's excuse for December 2-6 for psychiatric problems and notified Hardee's that her doctor had extended her excuse an additional thirty days. (Compl., Doc. 1, ¶¶ 44, 46). Count II sufficiently pleads Lindsey's claim for sex discrimination, and the court FINDS that the motion to dismiss is due to be DENIED as to the claim in Count II.

III. <u>Count III: FMLA</u>

In Count III of her Complaint, Lindsey asserts that Hardee's terminated her in violation of the FMLA.  To successfully bring a case of FMLA discrimination claim, a plaintiff must establish that she was entitled to the FMLA benefit, and that the defendant had notice that she was entitled to it, but denied the benefit. *See Strickland v. Water Works and Sewer Bd. of the City of Birmingham,* 239 F.3d 1199,1206 (11 th Cir. 2001).  Hardee's claims that Lindsey's pleadings are deficient and bases its claims on a disagreement with the facts alleged.  For example, it claims that – contrary to the allegations in the Complaint – Lindsey failed to request FMLA leave.  However, in paragraph 53 of her Complaint, Lindsey stated that "[o]n or about December 2, 2010, plaintiff requested a protected medical leave under the Family Medical Leave Act due to the plaintiff's depression and other medical problems." (Compl. Doc. 1, ¶ 53).  If Hardee's challenges the truthfulness of the facts alleged, the appropriate stage to do so is summary judgment.  But, at this stage, the court must take the facts as alleged to be true.  It FINDS that the facts alleged state a claim under the FMLA, and therefore, the motion to dismiss is DENIED as to the claim in Count III.

IV. <u>Couny IV - ADA Claim</u>

In Count IV of her Complaint, Lindsey alleges that Hardee's discriminated against her by terminating her based on her disability – depression – in violation of the ADA.

Hardee's argues that Lindsey "only tenders unadorned accusations and naked assertions" in Count IV but then quotes a fairly specific allegation in her Complaint that she "notified the defendant that she had been taken off work for an additional thirty (30) days, due to psychiatric illness" and disagrees with the truthfulness of that allegation. (Def.'s Br., Doc. 6, at 18 quoting

8

Plaintiff's Compl., Doc. 1 ¶ 33). Hardee's further argues that the Complaint fails to state with specificity the communications between Lindsey and Hardee's about her absences.

Once again, the court disagrees with Hardee's and finds Lindsey's allegations to be sufficient. This stage of the case is not the appropriate time to quarrel with the truthfulness of Lindsey's facts or to demand the particularities of all alleged communications regarding her "disability." The purpose of discovery is to flesh out such claims. The court DENIES the motion to dismiss as to Count IV.

V. Conclusion

In sum, the court finds the motion to dismiss is due to be DENIED.

Dated this 4th day of March, 2013.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE